## FELICIA CHRETIEN et al. *v.* JOHN G. RICHARDSON et al.

Although an act be in the form of a sale, yet from the circumstances and the stipulations it contains, it may be manifestly a retrocession.

A resolutory condition is implied in all commutative contracts, and the effect of the dissolution of the contract is to place matters as though the contract had never existed.  The vendor takes back the thing sold, free from all mortgages resulting from the possession of the vendee.

retrocession may be made by the voluntary act of the parties, where the rights of third persons are not prejudiced thereby.

Whenever a cause of resolution of contract exists, a party may do that voluntarily which he can be compelled to do by suit.  No one is compelled to defend a suit unjustly, and any consent judgment has no greater effect than a transaction which third parties may have set aside upon the grounds of collusion and fraud.

APPEAL from the District Court of the Parish of St. Mary.  *Overton*, J.  *A. S. Magill* and *T. H. Lewis*, for plaintiffs.  *Olivier* and *E. Simon*, for defendants.  The judgment of the court was pronounced by

Rost, J.  The plaintiff, who has obtained a judgment of separation of property against her husband, *Charles N. Olivier*, seeks to subject a plantation and slaves, in the possession of the defendant, to her legal mortgage, on the ground that this property belonged to her husband, and was sold by him to the defendant during the marriage, and after her legal mortgage attached thereon.

The answer controverts the judgment of separation, and denies the existence of the mortgage; should the mortgage exist for any portion of the claim, the defendant further answers, that, in 1840, he sold the property in controversy to *Charles. N. Olivier*, who, in consideration of the sale, assumed to pay mortgages existing on the property to the amount of $29,505, and gave the defendant his six promissory notes, payable from one to six years, and amounting together to the sum of $35,495.  That the said *Olivier* retained the property four years and a half without paying any portion of the debts he had assumed, and but a small amount upon his notes; in consequence of which the defendant obtained an order of seizure and sale, and the property was seized and advertised to be sold; but before the day of sale the matter was arranged amicably, and *Charles N. Olivier* made to him a retrocession by which the parties were replaced in the same situation as if no sale had ever taken place; and all mortgages affecting the property, in the name of *Charles N. Olivier*, were extinguished.

Should this ground of defence not be sustained, the defendant further alleges, that the superior mortgage and vendor's privilege, which have been temporarily extinguished by the confusion resulting from the retrocession to him, of the property subject to them, must revive and take effect if he should be evicted or disturbed by the enforcement of the mortgage of the plaintiff.

If all other defences should fail, the defendant asks, that the retrocession from <span style="float:right">CHRETIEN<br>*v.*<br>RICHARDSON.</span> *Olivier* to him be annulled in the present suit, on the ground of the violation of that stipulation of the contract by which he bound himself to obtain the renunciation of his wife, and for a breach of warranty in authorizing his said wife to institute the present action.

The judgment of the district court was, that so much of the property in controversy as would satisfy the sum of $14,384 41 be seized and sold under the legal mortgage of the plaintiff. The defendant has appealed.

The district judge considered the claim and right of mortgage of the plaintiff as satisfactorily proved, and correctly held her renunciation in favor of the defendant to be informal and void. He further held the mortgage and vendor's privilege existing in favor of *Richardson* as having been finally extinguished by the retrocession, and was of opinion that the retrocession, as made, could not operate a dissolution of the contract; giving as a reason, that under arts. 2040, 2042, C. C., the contract could only be dissolved by suit or by exception. We will first examine the last proposition.

The act under which the defendant holds, although in the form of a sale, is, manifestly, a retrocession. The warranties it stipulates are all given by the purchaser to the vendor, who is expressly discharged from all personal responsibility and liability under the original contract.

It is conceded, that a resolutory or dissolving condition, to take effect in case either of the parties does not comply with his engagements, is implied in all commutative contracts, and that the effect of the dissolution is, to place matters as though the obligation had never existed; so that the vendor, in cases arising on contracts of sale, takes back the thing sold free from all mortgages and charges created by the purchaser, or resulting from his possession as owner, and the operation of law. This is one of the fundamental principles of our legislation, and has more than once been acted upon by our predecessors. C. C. 2040, 2041, 2042, 2539. *Powers, Tutrix,* v. *Ocean Insurance Company,* 19 L. R. 30. *Mortee* v. *Roach's Syndic,* 8 L. R. 83.

But the plaintiff insists, and the judge of the district court held, that under art. 2042 C. C., the dissolution of a contract of sale must in all cases be sued for, and that a voluntary rescission cannot affect third persons.

Art. 2042 is in these words: "In all cases, the dissolution of a contract may be demanded by suit or by exception, and when the resolutory condition is an event not depending on the will of either party, the contract is dissolved of right, but in other cases it must be sued for." It is, in substance, the same as art. 1184 of the Napoleon Code; and it is urged that, under both codes, the inexecution of the obligation is a question of fact which must in all cases be judicially ascertained before the dissolution of the contract can take place. Duranton is the principal authority in support of that interpretation. That author is of opinion, that as the symbolical delivery of immovables sold, which the Roman law required, is no longer necessary, and the dominion passes by consent of parties, the purchaser is the owner before payment of the price, in consequence of which the retrocession should in all cases be viewed as a new sale, and the property should return to the vendor affected by the legal mortgage of the wife of the purchaser. 16 Duranton, No. 387.

Rolland de Villargues expresses a similar opinion; and Touillier, in his Commentary on Obligations, would seem to countenance it. He states, in that portion of his work, that a re-transfer of property purchased, instead of being a resolution of the original contract, is in all cases a new convention which cannot prejudice the rights acquired by third persons. 7 Toullier, 551.

But, in his Commentary on the Regime de la Communauté, the same author lays down the rule, that the relinquishment, pure and simple, by the purchaser who has not yet paid all or a part of the price in favor of the vendor, who subsequently married, is only a resolution of the sale which the vendor could cause to be judicially pronounced, and that this relinquishment is, therefore, *not a new title*; it is, rather, *distractus quam novus contractus*, and the property thus returned does not enter into the community. 12 Toullier, No. 195.

After having said, that the re-sale is in all cases a new convention, he lays down the broad principle, that it amounts to a resolution of the contract, without even requiring that it should be made *ex causâ necessariâ*. Such an authority can have but little weight; nor do we consider the reason given by Duranton for changing the rule of the Roman law, as satisfactory. Whether the delivery of the thing sold takes place by consent of parties, or by certain prescribed formalities, the possession is in both cases alike transferred to the purchaser before the payment of the price, when the sale is made on credit.

A brief examination into the origin of the resolutory condition may assist us in solving the question under consideration.

The resolutory condition in synallagmatic contracts is descended to us from the Roman law. Under that system of jurisprudence, however, the resolution of a sale for the non-payment of the price, could not be demanded without an express stipulation to that effect. The extension of the principle to the contract of sale is of comparatively recent origin; but since it took place, the jurisprudence established for the resolution of other contracts has, so far as we are informed, been uniformly applied to that contract also.

The rule of the Roman law on the subject before us, is contained in law 3d D. quib mod. pign. vel. hypoth. solv. It is thus stated by Loyseau: "Il est une très belle théorie du droit, à savoir, que quand la résolution se fait pour cause nécessaire, alors les hypothèques contractées depuis le contrat sont résolues, mais quand elle se fait par la volonté de celui qui les a contractées, alors elles ne peuvent résoudre, afin qu'il ne soit en la puissance du debiteur d'amortir l'hypothéque. quand il le voudra, qui est la distinction qu'il faut tenir pour générales, en tous les cas auxquels cette question peut échoir."

This was considered the law of France by Dumoulin and Pothier; and Merlin and Troplong are of opinion, that it has not been changed by the Napoleon Code. Merlin. quest. droit. *verbo* Resolution, § 5, No. 3. Troplong, de la vente No. 691, vol. 2. Privilèges et Hypothèques, No. 465, 466, 467, and authorities cited. Pothier, vente No. 328.

But there are other authorities entitled to more weight with us. The case of *Powers, Tutrix,* already cited, was one of retrocession by notarial act, and the Supreme Court held, that the plaintiff was restored to the possession and ownership of the property, as if no sale or transfer had taken place. The same question was under consideration in the case of *Fulton* v. *Her Husband,* 7 R. R. 75, when the court said, "the re-transfer made to the plaintiff in 1835, by *Morrison,* cannot be viewed in the light of a purchase made during marriage. He voluntarily did that which his vendor could have obtained by bringing against him an action to rescind the sale on account of his failure to pay the price. The land became the property of the petitioner in the same manner as if the sale to *Morrison* had been judicially rescinded, and she held it by the title which she had before her marriage, as though no sale had been made."

A doubt has been suggested, whether in those cases the point had been expressly made and elaborately argued as it has been before us. We have no

means of ascertaining these facts, but we must presume that the court decided <span style="float:right">CHRETIEN<br>*v.*<br>RICHARDSON.</span> advisedly. We know that this question has several times been before the Court of Cassation, and that it has been fully argued before that enlightened tribunal. Its decisions have uniformly sustained the rule of the Roman law. It was sustained in the case of *Coens* v. *Bouvier et Consort*—Dalloz, 27, part 1. p. 500—and in the case of *Gueneday* v. *Dicts*. Dalloz, 29, part 1, p. 177. But the case in point, and in which the whole doctrine of the resolution of contracts as it bears upon this controversy was reviewed with uncommon care, is that of *Roussan* v. *Dejean*. Dalloz, 36, part 1, p. 167.

In that case the resolution of a sale had been made in good faith on account of inability to pay the price, by an act under private signature. In the time which elapsed between the purchase and the resolution, a judgment creditor of the purchaser had inscribed his judicial mortgage. Being sued by the vendor to show cause why the inscription should not be erased from the records, his defence was, that the resolution of the sale not having been executed in presence of a justice or of the parties interested, could not have the effect which the law only gives to a resolution judicially ordered.

The court of the first instance decreed the erasure of the mortgage. On appeal, the judgment was affirmed, and the defendant brought the question before the Court of Cassation. All the arguments pressed upon us in this case were made use of on that occasion; but they proved unavailing, and the judgment was sustained. The reasons of the Court of Cassation are as follows : " The court considering that whereas, under articles 1650 and 1654 of the Civil Code, the non-payment of the price authorizes the resolution of the sale : that the law thus declaring the consequences of that fact, even in cases when the contract is silent, it follows that the amicable and *bonâ fide* resolution of the sale by reason of the non-payment of the price, and of the impossibility to pay it, proceeds from a forced and necessary cause, which enables the vendor to resume the dominion of the property, not as under a voluntary re-transfer, but with the same title and the same legal effects which would result from a resolution judicially pronounced. That it is true it follows from art. 1184 of the Civil Code relative to synallagmatic contracts in general, and from arts. 1655 and 1656 relating to the sale of immovables in particular ; that resort must be had to the authority of the judge when the resolution prayed for by the vendor is resisted by the purchaser ; but not that the rule is the same when the purchaser acknowledges the non-payment of the price, and his absolute inability to pay it. That in such a case, and in the absence of all contestation, the intervention of the judge, useless and frustratory, so far as the rights of the parties are involved, has not been nor should it be prescribed in the alleged interest of the creditors of the purchaser. That so far as the unpaid vendor is concerned, those creditors are only the *ayans* cause of the purchaser represented by him, and their rights can in no case prevail over those of the vendor, they being in fault in not having ascertained by the inspection of the titles and receipts whether the price had been paid."

This interpretation appears to us correct and consonant with justice. Whenever a necessary cause of resolution exists, the purchaser may do voluntarily what he can be compelled to do by suit. The disposition of art. 2042, which says that the resolution must be sued for, is to be understood as applying to cases in which the purchaser refuses to rescind the contract, although unable to comply with its stipulations.

CHRETIEN
v.
RICHARDSON.

If the defendant had sued *Olivier* in this case, the latter could not have been compelled to defend himself; and under his agreement with his vendor he would no doubt have come into court and offered to retrocede the property to him, on condition that he would assume the payment of the mortgage of $4,500 given by *Olivier* to the Union Bank, and receive in satisfaction of this debt, and of the fruits during four years and a half, the sum which he, *Olivier*, had paid on the price. The defendant would have assented to the proposal, and a consent decree dissolving the sale would have been entered, which, in a legal point of view, would have differed only in form from the dissolution agreed to by way of transaction, and executed by notarial act. A consent decree is nothing more than a transaction ; and all transactions have between the parties the force and effect of the thing adjudged. L. C. 3045. " Des que le droit de faire résoudre la vente est acquis au vendeur, et que l'acquéreur n'a aucun moyen de s'y soustraire, qu' importe qu'il soit reconnu par une transaction ou déclaré par un jugement, la transaction ne fait alors que ce qu'il serait impossible que le jugement ne fît pas." Merlin, Loco Citato.

We consider the rule as stated by Loyseau to be the true one, and that the inquiry should in all cases be, whether the resolution of a contract made extra judicially was *ex causá necessariá, vel ex causá voluntariá.*

The appellee's counsel contend, that the necessity can only be judicially established by the decree of a competent court dissolving the sale. So far from acceding to this proposition, we are of opinion, that such a decree would in no case be conclusive evidence of the necessity ; and that third persons having an interest to do so, might controvert it and show that it was collusive, and that no necessity existed for the resolution of the contract. When the suit has been contested, the decree dissolving the sale is *primá facie* evidence that it was dissolved *ex causá necessariá ;* and third parties who seek to avoid its effect, must prove the fraud or collusion. When, on the other hand, the contract has been rescinded extra judicially or by a consent decree, the *onus* of proving the necessity devolves upon the party who claims the benefit of the resolution.

There may be great difficulty in certain cases to do away with the false representations of the parties, and to prove that the rescission of the contract was *ex causá voluntariá.* But that difficulty exists to the same extent, whether the rescission is effected by a judgment or by way of transaction.

The fact that this mode of proceeding was matured and brought into use by the Roman jurisconsults, and that it has been followed by modern nations and extended to the contract of sale to which it did not originally apply, sufficiently shows that it does not, in practice, afford any great facilities to fraud. It must be observed that there is, between the vendor and purchaser, an opposition of interests sufficient to render cases of fraudulent combination between them extremely rare. If the property falls in value after the sale, the interest of the vendor, especially when he has been partially paid, is to enforce a specific performance of the contract. If, on the contrary, it rises in value, it is the interest of the purchaser to retain it and pay the price ; and if it was proved in any case of resolution by contract that the property might at the time have been sold for more than was due on it, to the knowledge of the purchaser, the *boná fides* would be wanting, and the rights of subsequent mortgage creditors would not be affected by it. In this case, the necessity is clearly made out. Nothing had been paid on the cash portion of the price. The purchaser was greatly in arrears on the credit installments, and interest had been accumulated from the day of sale, when, the defendant having no longer any hope of being paid, had

the property seized and advertised under his mortgage and privilege. It is not pretended that *Olivier* could have paid the amount then due. Every thing in the record leads to the conclusion that he could not have done so. He was helpless and at the mercy of his creditor, who was about to sell his property for cash if no arrangement was made. This makes out a clear case of necessity ; and as the plaintiff has not shown that the property, if sold under the order of seizure, would have brought more than enough to satisfy the defendant's claim, she has sustained no injury by the retrocession.

Such being the opinion we have formed on this part of the case, it becomes unnecessary to pass upon the other grounds of defence. We consider that the contract was dissolved by the retrocession, and that the property returned to the possession of the defendant, free from incumbrance and unaffected by the legal mortgage of the plaintiff.

It is therefore ordered, that the judgment in this case be reversed, and that there be judgment in favor of the defendants, with costs in both courts.

SLIDELL, J., concurring. I concur in the decree prepared by Judge Rost, but wish to be considered as not concurring in all the propositions announced in his opinion, and as acting only with reference to the state of the facts presented in this cause. It is proper to add, that my conclusion is adopted with diffidence, especially as I had not the advantage of being present at the argument.

EUSTIS, C. J., dissenting. I am not able to concur in the views taken by my brethren of the law of this case.

According to the provisions of our code, articles 2539, 2041 and 2042, my impression is, that a subsequent mortgage creditor on property, the price of which has only been in part paid, for which the vendor's privilege and a special mortgage has been retained, can only be cut off by a judicial rescission of the sale, or by judicial proceedings for the recovery of the price, and the sale of the property under the privilege or mortgage. To allow the parties themselves, by an agreement, to defeat the rights of subsequent mortgagees, I think is inadmissible under the code, and in practice fraught with danger of abuse. *Ricks* v. *Goodrich*, 3d Ann. 217.