## THOMAS McGOWAN *v.* MARY LAUGHLAN.

When the only subscribing witness to an act of sale is dead, and after diligent search and inquiry no one can be found who is acquainted with the signature or place of residence of the vendor, proof of the genuineness of the signature of the subscribing witness will be sufficient proof of the execution of the instrument.

APPEAL from the District Court of Carroll, *Farrar*, J.

*Goodrich & DeFrance*, for plaintiff and appellant. *A. B. Caldwell*, for defendant.

VOORHIES, J. This is a petitory action brought by the plaintiff to recover a slave named *Jerry*. He alleges that he acquired said slave, then known as *Spencer*, by donation from his father, prior to the year 1839. That sometime in that year or the next, 1840, said slave was enticed away from his possession in Tennessee, where he resided, and came into the possession of the late *Wm. Laughlan* about twelve years since, and has ever since been in possession of said *Laughlan* or that of the defendant, but without any legal title.

The defendant in her answer avers that her title is derived from *James Stotts*, a resident of Arkansas, who sold said slave to the late *William Laughlan*, at Vicksburg, on the 20th November, 1841, for the price of $740; that *John Gedge* bought him at the syndic's sale of the estate of said *Laughlan*, on the

18th of June, 1851, and sold him to her on the 18th of August, 1851, and that she, and those under whom she holds, have been in the quiet, public and uninterrupted possession of said slave as owners in good faith more than ten years prior to the institution of the present suit. She therefore pleads the prescription of five and ten years as a bar to the plaintiff's action. There was judgment in her favor, and the plaintiff appealed.

We conclude from the admission of the plaintiff that *William Laughlan* and the defendant had been in the uninterrupted possession of the slave *Jerry* about twelve years previous to the date of the filing of his petition, on the 20th of December, 1854, a sufficient length of time to acquire said slave by prescription with a just title. C. C. 3432. In the absence of proof to the contrary, *William Laughlan* and those holding under him must be presumed to have been possessors in good faith. C. C. 3447, 3448.

But it is contended by the appellant that the sale from *Stotts* to *Laughlan* was an absolute nullity, insufficient to constitute a just title to form the basis of prescription, because it was in contravention of a constitutional and statutory provision of the State of Mississippi, interdicting the introduction of slaves into that State as merchandize or for sale.

Conceding that such an interdiction did exist, of which we cannot take judicial notice, there is no evidence in the record to show that the slave was brought into Mississippi by *Stotts* as merchandize or for sale. Certainly the recital in the sale, that he resided in the State of Arkansas, could scarcely be viewed as affording any proof of such fact, much less the fact that the slave had, as alleged by the plaintiff, absconded in 1839 or 1840 from his residence in Tennessee. Indeed, for aught that appears to the contrary, *Stotts* may have acquired his title to the slave in Mississippi.

A bill of exceptions to the admission of the sale under private signature from *Stotts* to *Laughlan*, in evidence on the trial of the cause below, has been submitted to our consideration. It is objected that there was not sufficient proof of its execution. *W. Pollock*, the only subscribing witness, then resided and continued to reside at Vicksburg until the time of his death, in the fall of 1843. The genuineness of his signature is satisfactorily proved.

The defendant appears to have made a strict, diligent and honest inquiry and search for the vendor, *James Stotts*, at Vicksburg, and at the place indicated in the deed as his residence, in the State of Arkansas, but in vain. It is shown that he had never resided in the parish of Carroll, nor that any one had known him in the State. None of the witnesses in Vicksburg, whose depositions were taken under commission, appear to have been acquainted with his signature or his place of residence.

We think the evidence in the record is sufficient to establish the impossibility of proving the signature of *James Stotts* in any other manner than that to which the defendant has resorted, and that she has brought herself within the rule for the admission of such secondary evidence. 9 An. 227; Greenleaf on Evidence, §§ 574, 569, 572, 575, 604, 606 and 610.

It is, therefore, ordered and decreed, that the judgment of the court below be affirmed, with costs.