|, DOUCET, Chief Judge.
Defendant, Stephen Joseph Romero, Jr., and intervenor, the Bank of Erath, appeal a judgment of the district court granting Plaintiffs, Wilfred LeBlanc’s, petition for declaratory judgment, ordering certain property in Vermilion Parish returned to Mr. LeBlanc free and clear, and the mortgage on the property, in favor of interve-nor, Bank of Erath, cancelled. We affirm the judgment of the district court.
FACTS'
On July 26, 1996, Plaintiff and Defendant entered into a cash sale whereby Plaintiff sold one acre of land on Louisiana Highway 338 to Defendant for the sum of two-thousand dollars and no cents ($2,000.00). The act of sale was recorded the same day. The act of sale contained the following provision (emphasis ours):
Vendor herein retains a right of reversion in that should Vendee ever cease to permanently occupy the property sold herein, then title to the property sold herein shall immediately revert back to Vendor.
[Initialed by Vendor] [Initialed by Vendee] WL SJR, Sr.
Thereafter, Mr. Romero and Plaintiffs daughter, Natalie LeBlanc, lived on the property, first in a trailer, and subsequently, in a home they placed on the property. Mr. Romero mortgaged said property to the Bank of Erath on February 24, 1999. That mortgage was recorded on or about March 1, 1999. Sometime in April 1999 Mr. Romero and Ms. LeBlanc moved from the property to a home in Erath. Mr. Romero then rented the house on the acre on Highway 338 to a nephew. He maintained some tools in a shed on the property and kept some sheep on the rear portion of the land.
Mr. LeBlanc returned Mr. Romero’s purchase price of $2,000.00 the first week of April 1999, and informed Mr. Romero he was availing himself of the redemption clause in the original act of sale. Mr. Romero resisted Mr. LeBlanc’s demand to | ¡.move his house and belongings off the property, and on May 5, 1999, Plaintiff filed the instant action.
LAW
La.Civ.Code art. 2567 provides as follows: “The parties to a contract of sale may agree that the seller shall have the right of redemption, which is the right to take back the thing from the buyer .” Accordingly, the clause in the act of sale from Mr. LeBlanc to Mr. Romero was a valid, enforceable term of the contract. The act of sale did not limit the time for redemption, but La.Civ.Code art. 2568 states:
The right of redemption may not be reserved for more than ten years when the thing sold is immovable, or more than five years when the thing sold is movable. If a longer time for redemption has been stipulated in the contract that time must be reduced to either ten or five years, depending on the nature of the thing sold.
Since the act of sale was entered into on July 26, 1996, and the suit seeking redemption was filed on May 5, 1999, it is well within the statutory ten-year limit for the redemption of an immovable.
The Bank of Erath intervened in the suit claiming that Mr. Romero had never “ceased to permanently occupy the subject property” and alternatively, in the event the court ruled in favor of Plaintiff, seeking to have its mortgage maintained. In *421 respect to the Bank of Erath’s claim, La. Civ.Code art. 2588 provides: “The seller who exercises the right of redemption is entitled to recover the thing free of any encumbrances placed upon it by the buyer. Nevertheless, when the thing is an immovable, the interests of third persons are governed by the laws of registry.”
^DISCUSSION
Both Mr. Romero and the Bank of Er-ath argue that Mr. Romero has never ceased to permanently occupy the subject property inasmuch as he collects rent from his tenant and maintains some tools and sheep on the property. Both Appellants also argue that the trial judge erred in considering parol evidence, i.e., the testimony of Mr. LeBlanc, in regard to Plaintiffs motive for selling the land in question.
Mr. LeBlanc testified that his chief motive for selling the land to Mr. Romero was to have his daughter, who was co-habiting with Mr. Romero, close to him. The trial judge relied on this testimony and the wording of the contract in reaching his conclusion. Defendant argues that Mr. LeBlanc’s testimony as to the cause of the contract was improperly admitted under the parol evidence rule. While we recognize that parol evidence is inadmissible to vary the terms of a contract unless the terms are ambiguous, we note that the Louisiana Supreme Court approves the admission of parol evidence to establish the consideration for a contract, even though it may not be recited in the contract.
Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, par-ol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La.1981). It is equally well established that the true cause or consideration for a contract may be shown by parol evidence, even though the true consideration is different from that which is recited in the written act. Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960); Hogan v. McKeithen, 527 So.2d 982 (La.App. 2 Cir.1988).
McCarroll v. McCarroll, 96-2700, pp. 12-13 (La.10/21/97), 701 So.2d 1280, 1286 (footnote omitted)(emphasis ours).
14Thus, we find this testimony was properly admitted. Mr. LeBlanc’s “chief motive,” his desire to have his daughter live close to him, obviously made up, at least, part of the consideration for the sale.
As to whether Mr. Romero continued to “permanently occupy” the land after he and Ms. LeBlanc moved into a house in Erath, we again agree with the trial judge. Appellants point us to Black’s Law Dictionary for definitions of “occupy” and “occupancy.” However, we note that not every word in a legal document need be defined in “legalese.” If we look to our Civil Code, “occupancy” is defined in La. Civ.Code art. 3412 as follows: “Occupancy is the taking of possession of a corporeal movable that does hot belong to anyone. The occupant acquires ownership the moment he takes possession.” Clearly, this definition has no meaning in the terms of this contract. Rather we, as we are sure the trial judge did, interpret the phrase “permanently occupy” as to permanently reside thereon. This same meaning is found throughout Louisiana law. La. Const, art. VII, § 20(A)(1) (emphasis ours) states:
*422 “The bona fide homestead, consisting of a tract of land or two or more tracts of land with a residence on one tract and a field, pasture, or garden on the other tract or tracts, not exceeding one hundred sixty acres, buildings and appurtenances, whether rural or urban, owned and occupied by any person, shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred dollars of the assessed valuation. The same homestead exemption shall also fully apply to the primary residence, including a mobile home, which serves as a bona fide home and which is owned and occupied by any person, regardless of whether the homeowner owns the land upon which the home or mobile home is sited; however, this homestead exemption shall not apply to the land upon which such primary residence is sited if the homeowner does not own the land.”
La.R.S. 20:1(A)(1) (emphasis added) states in part: “The bona fide homestead consists of a residence occupied by the owner and the land on which the residence is located, including any building and appurtenances located thereon....”
| BFurther, La.R.S. 9:374(A) (emphasis ours) states:
When the family residence is the separate property of either spouse, after the filing of a petition for divorce or in conjunction therewith, the spouse who has physical custody or has been awarded temporary custody of the minor children of the marriage may petition for, and a court may award to that spouse, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or im-movables pending the partition of the community property or one hundred eighty days after termination of the marriage, whichever occurs first. In these 'cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family home and the use of community movables or immovables in awarding alimony or child support.
Accordingly, we find, as did the trial judge, that when Mr. Romero moved his residence from the land in issue, he ceased to “permanently occupy” the property, and the property became subject to Mr. LeBlanc’s right of reversion contained in the act of sale to Mr. Romero. As to the Bank of Erath’s argument that its mortgage should follow the property, we once again agree with the trial judge — the property reverts to Mr. LeBlanc free and clear of the Bank of Erath’s mortgage.
It is conceded, that a resolutory or dissolving condition, to take effect in case either of the parties does not comply with his engagements, is implied in all commutative contracts, and that the effect of the dissolution is, to place matters as though the obligation had never existed; . so that the vendor, in cases arising on contracts of sale, takes back the thing sold free from all mortgages and charges created by the purchaser, or resulting from his possession as owner, and the operation of law.
Chretien v. Richardson, 6 La. Ann. 2, 3 (1851). More recently, the supreme court followed the Chretien case in Liquidators of Prudential Sav. & Homestead Soc’y v. Langermann, 156 La. 76, 91-92, 100 So. 55, 61 (La.1923):
*423 | ^Article 2045E[1] of the Civil Code [1870] declares that the dissolving condition, when accomplished, operates the revocation of the obligation, and places matters in the same state as though the obligation had never existed.
When the condition happens, therefore, the property returns to the vendor free of all alienations and incumbrances imposed by the vendee. Stevenson v. Brown, 82 La. Ann. 461; George v. Lewis, 11 La.Ann. 654; Johnson v. Bloodworth, 12 La. Ann. 699; Thompson v. Kilcrease, 14 La. Ann. 340; George v. Knox, 23 La. Ann. 354, 1871 WL 6892; Templeman v. Pegues, 24 La. Ann. 537.
The vendor may enforce the resoluto-ry condition by suit to rescind the sale, or the purchaser may do voluntarily what he can be compelled to do by suit; i.e., he may make a voluntary retrocession of the property to the vendor. In either case, the vendor does not acquire a new title from the vendee, but the property reverts back to the vendor, ... as if no sale had taken place. Chretien v. Richardson, 6 La. Ann. 2; Fulton v. Fulton, 7 Rob. 75; Power, Tutrix, v. Ocean Ins. Co., 19 La. 28, 36 Am.Dec. 665.
See also Sealy Realty Co. v. Brangato, 255 La. 898, 233 So.2d 557 (La.1970).
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are to be borne equally by Appellants, Stephen J. Romero, Jr. and the Bank of Erath.
AFFIRMED.

. See La.Civ.Code (1984) art. 2567 and art. 2588.