CIACCIO, Judge.
This case arises out of a contract of sale of certain property located at 1225 Desire Street in New Orleans.
*1198 On January 29, 1986, Mrs. Dolores N. Wilson agreed to purchase this piece of property from Mr. and Mrs. Walter Claiborne for the sum of $42,000.00. Pursuant to this agreement, Mrs. Wilson issued a cashier’s check dated March 20, 1986 in the amount of $10,000.00 for a deposit on this property. The check was made payable to H.M. Antoine, the broker on the Desire Street property who was representing both Mrs. Wilson and the Claibornes in this sale. Mrs. Wilson applied for and obtained financing for the remainder of the purchase price from Globe Homestead.
By the terms of the original purchase agreement, the act of sale was to be passed on or before April 29, 1986, with a provision that if curative work in connection with the title was required, the sale could be extended for thirty additional days or until May 29, 1986. However, in preparing to execute this sale, it was discovered that a portion of this property was actually owned by Mrs. Claiborne’s mother, Ruth Veal. For this reason, the sale did not take place by May 29, 1986, although the Clai-bornes instituted proceedings to open the succession of Mrs. Veal to transfer title of the property to Mrs. Claiborne and another heir.
On June 30, 1986 the parties executed a written agreement which amended the original purchase agreement to extend the passage of the act of sale until August 22, 1986. On the following day, July 1, 1986, Mrs. Wilson signed the following document:
I, Dolores N. Wilson, agree to extend the agreement to purchase the property located at 1225 Desire Street, New Orleans, Louisiana, in order that sellers, Mr. & Mrs. Walter Claiborne be allowed enough time to complete whatever matters need to be completed with respect to the Succession of Mrs. Veal, et al.
Subsequently, Mrs. Wilson decided that she no longer wanted to purchase this property and made demand for the return of the $10,000.00 deposit. The Claibornes then filed this concursus proceeding seeking a declaration that Mrs. Wilson had forfeited her deposit based on her failure to purchase the property. H.M. Antoine joined in this suit alleging that Mrs. Wilson was obligated to pay his real estate commission based on her breach of the contract.
Mrs. Wilson filed a general denial to the petition for concursus and additionally filed a reconventional demand against H.M. Antoine for indemnity and the return of monies allegedly withheld from her by Mr. Antoine and for damages in connection therewith. Mrs. Wilson later amended these pleadings to allege that the original purchase agreement was null and void and therefore not binding on her, and to add the Claibornes as parties to the reconven-tional demand. She alleges that she is entitled not only to the return of the deposit, but also to an equal amount in damages from the Claibornes for their failure to complete the act of sale, in addition to attorney’s fees and costs.
The trial court rendered judgment in favor of Mrs. Wilson in the concursus proceeding dismissing plaintiffs’ claims against her. The court also found in favor of Mrs. Wilson on the reconventional demand, ordering H.M. Antoine to return the $10,000.00 deposit to Mrs. Wilson with interest. The court determined that the amendments to the purchase agreement were not signed voluntarily by Mrs. Wilson, and therefore they did not revive her obligation under the purchase agreement. The judgment was silent as to H.M. Antoine’s claim for his real estate commission, and to Mrs. Wilson’s claims for damages, attorney’s fees and costs.
The Claibornes and Mr. Antoine appeal, arguing that the trial court erred in finding that the extension of the purchase agreement dated July 1, 1986 was not a valid one. Mrs. Wilson timely answered the appeal, arguing that the trial court erred in failing to award her damages under the contract for the seller’s failure to comply with the agreement. She also contends that she is entitled to an award of attorney’s fees and the $502.00 in costs she paid to Globe Homestead for loan approval.
In its written reasons for judgment, the trial court determined that the purchase *1199 agreement became a relative nullity once the time period for completing the act of sale elapsed without the event having taken place. The court, citing La.C.C. article 1842, further stated that the relative nullity of an obligation may be cured if there is an express act of confirmation which evidences the intention to cure the relative nullity. The court then concluded from the testimony and documents in evidence that the amendment to the purchase agreement dated June 30, 1986 and the statement dated July 1, 1986 were not signed by Mrs. Wilson “freely and voluntarily and based upon knowledge of the effect of what she was signing.”
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Further, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of facts findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra at 844; Canter, supra at 724.
After reviewing the record in its entirety, we affirm the judgment of the trial court which dismisses plaintiffs’ petition for con-cursus and rules in favor of defendant in the reconventional demand. This opinion, however, should not be construed as an approval of the trial court’s conclusions of law that the original purchase agreement became a relative nullity which could have been revived by an express act of confirmation. Rather we hold that the trial court was not clearly wrong in finding that Mrs. Wilson did not voluntarily renew the terms of the original purchase agreement to allow the sellers additional time to correct their title once the time period specified in the original agreement had expired.
At trial, Mrs. Wilson testified that Mr. Antoine, the real estate broker, knew she no longer wanted the property, yet did not tell her the purchase agreement had expired on May 29, 1986. Rather, she testified he told her he would sue her if she did not buy the property from the Claibornes. She refused to sign an extension of the purchase agreement at that time.
She further stated that on June 30, 1986 she signed an “Amendment to Purchase Agreement” giving the sellers more time to complete the act of sale. This document was brought to her home by Mrs. Claiborne, and Mrs. Wilson testified she believed she would be sued if she did not sign the document.
Mrs. Wilson further testified that on or about July 1, 1986, she received a certified letter from counsel for the Claibornes, Mr. Gerdes. This letter which was dated June 30, 1986 provided:
Dear Ms. Wilson:
I represent Mr. & Mrs. Claiborne in connection with the purchase of the property at 1225 Desire Street, New Orleans, Louisiana.
As you know you have been in the property for four months, rent free. Under the terms of the contract you must allow them an additional amount of time in which to cure the title to the property. To date, you have refused to do so. Mr. Antoine says that he has funds in his possession. Mr. & Mrs. Claiborne are claiming the back due rent since you did not buy the property as well as their damages in connection with this matter. Mr. Antoine also may have to claim his real estate commission out of the proceeds.
Therefore, we would hope that you would reconsider and allow us to go ahead with the Act of Sale as per our original agreement so that everything may be smoothly completed. If for some reason this is unacceptable, then we will *1200 have no alternative but to file suit for whatever portion of the proceeds are due any individual.
Thank you.
Sincerely,
Louis A. Gerdes, Jr.
Mrs. Wilson stated that as soon as she received this letter she went to Mr. Gerdes’ office to discuss the matter. At that time she told Mr. Gerdes that she did not want to buy the property. Although she testified that she signed the document given to her by Mr. Gerdes, she stated she believed she had no choice. Mrs. Wilson testified:
By Mr. Gerdes: Did you understand this was to extend the agreement to purchase the property?
By Mrs. Wilson: It was to get some kind of finish up business, whatever they was doing concerning the property. That’s what you said.
By Mr. Gerdes: To extend the agreement to purchase the property?
By Mrs. Wilson: I don’t know if that purchased the property or not. I know they never did find the title.
By Mr. Gerdes: Did you read that part that says you agree to extend?
By Mrs. Wilson: Yes, I read it.
By Mr. Gerdes: Do you understand that meant to give them more time to pass the Act of Sale?
By Mrs. Wilson: No, I didn’t understand. All I did, said, T sign it to do whatever they have to do.’
By Mr. Gerdes: Did you tell me you didn’t understand what the extension of agreement meant?
By Mrs. Wilson: No, I didn’t. I said for ya’ll to buy it because ya’ll had the money. And he said he was going to sue me if I didn’t buy the property, Mr. Claiborne, I had to buy it.
Mr. Gerdes was called as a witness at trial and- stated that Mrs. Wilson did not tell him she refused to sign an extension to the purchase agreement. He did state, however, that he was aware that Mrs. Wilson had told Mr. Antoine previously that she did not want to allow the Claibornes additional time to acquire title to the property.
The plaintiffs contend on appeal that Mrs. Wilson signed these two documents voluntarily and understood the purpose of such an extension as she had entered into a similar agreement on a previous occasion. They argue that her testimony is evasive and contradictory and should be discounted. However, the trial court apparently believed the testimony of Mrs. Wilson, and stated in its reasons for judgment:
Mrs. Wilson, although her testimony is contradictory, seems to basically testify that she signed the agreements because she was advised that this was the only way she was going to get her money back, (reasons, page 1)
Having carefully reviewed the entire record in this case, we conclude that the trial judge’s decision to credit the testimony of Mrs. Wilson is not manifestly erroneous. The evidence reveals that Mrs. Wilson was not aware that the original purchase agreement was no longer valid as the time period for completing the act of sale had elapsed. Further, the letter written by counsel for the Claibornes instructs Mrs. Wilson that she “must allow them [the sellers] an additional amount of time in which to cure the title to the property.” This letter also acknowledges that Mrs. Wilson had previously refused to grant such an extension. The record supports the finding that Mrs. Wilson reasonably believed she would lose her deposit or encounter litigation had she persisted in refusing to grant the extension. Further, the evidence suggests that Mrs. Wilson, who was not satisfied with the property, would not have purchased the property had she been aware of the posture of the original agreement. Under these circumstances, any reasonable finder of fact could have concluded that Mrs. Wilson did not voluntarily extend the time period specified in the original purchase agreement. We find no manifest error on the part of the trial judge in so finding, and we affirm this part of the judgment.
H.M. Antoine, the real estate broker for this sale, also appeals from the judgment of the trial court alleging that he is *1201 entitled to recover his real estate commission from Mrs. Wilson. We note that the record indicates that Mr. Antoine has not brought a similar claim against the Clai-bornes to recover his commission.
On this issue, the purchase agreement entered into by the parties provides that either party who fails for any reason to comply with the terms of the contract is obligated to pay the agent’s commission. However, the contract also states that the agent has a right to recover his commission from the seller who fails to deliver merchantable title.
In the present case, the sale was not completed due to the defect in the Claiborne’s title to the property. There has been no showing that Mrs. Wilson failed in any way to comply with the terms of the contract dated January 29, 1986. Rather, she gave a deposit, obtained financing and was ready to purchase the property on the date specified in the agreement. We therefore find that Mrs. Wilson is not obligated to pay Mr. Antoine’s real estate commission, and we find no error of the trial court in failing to make such an award. Mr. Antoine’s only recourse for his commission would be against the Claibornes as sellers, and he has failed to make this claim.
We turn next to Mrs. Wilson’s claims on appeal for damages under the contract, attorney’s fees and costs. Mrs. Wilson argues that under the terms of the purchase agreement, she is entitled not only to the return of her deposit, but also to an equal amount to be paid as penalty for the sellers’ failure to honor their obligation. The applicable provision of the contract reads as follows:
The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission.
The record indicates that the sellers in the instant case failed to comply with this agreement for the sole reason that they were without a valid and merchantable title to convey. We conclude therefore that under the express provisions of the contract, the purchaser is not entitled to an equal amount of the deposit in damages, but may only demand the return of the amount actually deposited. Mrs. Wilson relies on Ducuy v. Falgoust, 83 So.2d 118 (La.1955) to support her position. However, unlike the situation here, the contract in Ducuy did not expressly provide for a situation where the seller fails to comply based on the inability to deliver title.
Mrs. Wilson also argues by her appeal that she is entitled to attorney’s fees and to the return of $502.00 she paid to Globe Homestead for loan approval. Under the express provisions of the contract, the inability of seller to deliver a merchantable title renders the contract null and void and limits the purchaser’s remedy solely to the return of the deposit. The clear language of the purchase agreement thus prohibits the recovery by purchaser of any damages or attorney’s fees.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be taxed against appellants, Mr. and Mrs. Walter Claiborne and H.M. Antoine.
AFFIRMED.