NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-961

REAL ESTATE DE LOUISIANE, INC.

VERSUS

ALLEN/LABORDE

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 15-C-5325-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Candyce G. Perret, Judges.

AFFIRMED.

John Alfred Mouton, III
Attorney at Law
P. O. Box 82438
Lafayette, LA 70598
(337) 988-6499
COUNSEL FOR APPELLEE:
    Lita Laborde

**Jonathan Clyde Vidrine**
**West & Vidrine**
**510 West Magnolia Street**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR APPELLANTS:**
    **William H. Allen**
    **Melody A. Allen**

**PERRET, Judge.**

This appeal follows a concursus proceeding filed by Real Estate de Louisiane, Inc., to determine who should receive a disputed escrow deposit, Lita Laborde (Buyer/Appellee) or William and Melody Allen (Sellers/Appellants). Ms. Laborde argues that the sale was conditioned on the ability to sell other property first, while the Allens maintain no such condition existed in the Buy-Sell contract they signed. Additionally, Ms. Laborde contends that the Buy-Sell contract signed by the Allens is not the contract she signed—that it contains additional terms and does not include the contingency clause conditioning the sale—and that the initials on the Buy-Sell contract are not hers. After a trial on the merits, the trial court determined there was no contract for sale because Ms. Laborde did not consent to the terms of the Buy-Sell contract which did not include a contingency clause. Therefore, the trial court found that Ms. Laborde was entitled to the escrow deposit and ordered that it be released to Ms. Laborde.

**FACTS AND PROCEDURAL HISTORY:**

Ms. Laborde and her friend, Richard Anderson, became interested in property owned by the Allens. Mr. Anderson wanted to purchase the property to move closer to his family. However, due to Mr. Anderson consistently being out of town, he reached an understanding with Ms. Laborde that he would provide the finances and Ms. Laborde would purchase the property for him, but in her name. After seeing the Allens' land for sale on October 7, 2015, Ms. Laborde and Mr. Anderson contacted the Allens' real estate agent, Bevely Thompson with Real Estate De Louisiane. The pair, along with their two friends, Mr. and Mrs. Chatelain and their daughter, then met Mr. Allen and Ms. Thompson that day at the property to view it. Mr. Anderson and Ms. Laborde ultimately decided to make an

1

offer on the property. The pair met at Ms. Thompson's office to fill out the offer paperwork on October 14, 2016. Ms. Laborde also agreed to have Ms. Thompson represent her interests in the transaction and signed a Disclosure and Consent to Dual Agent form.

The first offer made was for $205,000 on October 14, 2015, and, according to Ms. Laborde and Mr. Anderson, was a written offer that was contingent on Mr. Anderson first selling his property. Both Mr. Anderson and Ms. Laborde testified they witnessed Ms. Thompson write the contingency clause onto the second page of the offer. A copy of this offer was not given to Ms. Laborde or Mr. Anderson. The Allens allege that they never saw a written first offer and testified that the first offer was made over the phone by Ms. Thompson. According to the Allens, Ms. Thompson did not convey any contingency clause. The Allens rejected the first offer.

In response to the rejection, Mr. Anderson authorized a second offer to be made by Ms. Laborde—this time for $250,000. According to Ms. Laborde and Mr. Anderson, the second offer was again contingent on Mr. Allen first selling his property. The only change to the second offer was the price and the inclusion of a deposit. At the meeting with Ms. Thompson to sign the second offer, Ms. Laborde was provided with a copy of what was described to her as an incomplete offer, with her signature, admitted at trial as "Laborde 2." The contingency provision does not appear in Laborde 2.

The final Buy-Sell contract that was presented to and signed by the Allens, "Allen 2," also included a provision that the Allens would pay money towards closing costs, as well as a closing date, and that Ms. Laborde would deposit $25,000 into an escrow account. The Allens accepted the offer. When Ms.

2

Laborde was notified of the Allens' acceptance, she deposited the $25,000 into the escrow account.

The Buy-Sell contract was for a cash sale, not subject to appraisal, with a fourteen-day due diligence period, during which Ms. Laborde had the right to terminate the agreement. The closing date in the Buy-Sell contract was December 15, 2015. The Buy-Sell contract further specified that if the buyer defaulted, the seller would be entitled to retain the deposit.

In early December, before the closing date, Mr. Anderson and Ms. Laborde became aware that the offer accepted by the Allens did not include the contingency clause. On December 7, 2015, Ms. Laborde signed an Addendum to Purchase Agreement requesting the termination of the Agreement and a mutual release of the escrow back to Ms. Laborde. The Allens rejected the request for the release of the escrow.

Thereafter, Real Estate de Louisiane filed this concursus proceeding. The Allens answered the concursus petition and alleged that on October 17, 2015, the Allens and Ms. Laborde entered into an agreement for the sale of their property. The Allens further alleged that, according to the Buy-Sell contract, they were entitled to the return of the escrow deposit plus ten percent of the purchase price because Ms. Laborde breached the contract when she terminated the deal prior to closing. Ms. Laborde also answered the concursus petition by filing an answer and reconventional demand. Ms. Laborde asserted that there was no valid contract entered between the parties because there was no meeting of the minds when no contingency clause was provided in the contract. Ms. Laborde argued that she is entitled to the return of her deposit because there was no contract. The Allens filed a motion for summary judgment, requesting a dismissal of Ms. Laborde's claims,

and that the deposit be returned to them. The motion for summary judgment was denied and this suit was set for trial.

The trial court heard Mr. Anderson's and Ms. Laborde's testimony that, at all times, the contingency clause was part of the offer and that they witnessed Ms. Thompson write the contingency clause into the offer document. Additionally, Ms. Laborde testified that the initials on pages one and two of the signed Buy-Sell agreement were not her initials. Both pages one and two are pages with handwritten additions made to the contract, and page two is the page that Ms. Laborde and Mr. Anderson assert contained the contingency clause.

The trial court relied on La.Civ.Code art. 1848 which allows parol evidence, in the interest of justice, to show a vice of consent. The trial court found the differences between Allen 2, the final document signed by both parties, and Laborde 2, the copy of the second offer given to Ms. Laborde prior to the Allens' acceptance, disturbing. Specifically, the trial judge stated: "Laborde No. 2 is a document that was incomplete. It's a mirror of Allen No. 2 but it has additional writings and based upon the testimony which the Court found believable of Ms. Laborde, the additions [to Allen 2] were placed in after she signed that particular document." The trial court further determined that there were no contradictions in Mr. Anderson's and Ms. Laborde's testimony that would allow the court to conclude that what they testified to was untrue. Therefore, the court concluded there was no meeting of the minds between the parties and signed a judgment in favor of Ms. Laborde. This appeal follows.

On appeal, the Allens allege the following two assignments of error: (1) the trial court erred in allowing parol evidence when there was a contract of sale signed by all parties evidencing an agreement to a thing and a price; and (2) the

4

trial court committed manifest error in finding the buyer, Ms. Laborde, was entitled to the escrow deposit. We agree with the trial court's judgment for the following reasons, and now affirm.

**STANDARD OF REVIEW:**

On appeal, "[t]he determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong." *Dubois Constr. Co. v. Moncla Constr. Co., Inc.*, 39, 794, p. 2 (La.App. 2 Cir. 6/29/05), 907 So.2d 855, 857. The manifest error-clearly wrong standard is applied to factual findings:

> It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review[.]

*Claiborne v. Wilson*, 572 So.2d 1197, 1199 (La.App. 4 Cir. 1990).

**ISSUE ONE: Whether parol evidence was properly admitted.**

The Allens challenge whether the trial court properly permitted parol evidence. The Allens argue that the Buy-Sell contract was clear, unambiguous, and evidenced the parties' consent to the thing and the price via their signatures, therefore, the trial court should not have allowed parol evidence to alter the terms of the Buy-Sell contract. The Allens cite La.Civ.Code art. 2046, which states, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

Typically, parol evidence is not admissible to contradict, vary, or modify an authentic act or act under private signature. La.Civ.Code art. 1848. However, La.Civ.Code art. 1848 permits evidence to "prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid

5

oral agreement." Additionally, the supreme court has permitted parol evidence to establish the cause or consideration for a contract, even when it is not recited in the contract. *See McCarroll v. McCarroll*, 96-2700 (La. 10/21/97), 701 So.2d 1280; *see also LeBlanc v. Romero*, 00-1233 (La.App. 3 Cir. 2/28/01), 783 So.2d 419.

Ms. Laborde has continuously maintained that the contract signed by the Allens was not the contract to which she agreed or signed because the contract did not contain a contingency clause, was altered, and her initials were forged after she signed the last page. Accordingly, the trial court permitted parol evidence under La.Civ.Code art. 1848 because Ms. Laborde challenged her consent to the contract. We find no error in the trial court's decision to allow parol evidence in this case.

**ISSUE TWO: Whether Ms. Laborde is entitled to the escrow deposit.**

The Allens assert that the trial court erred in holding the Buy-Sell contract invalid which resulted in a return of the escrow deposit to Ms. Laborde. After reviewing the record in its entirety, we affirm the trial court's judgment, finding that the trial court was not clearly wrong in concluding that there was no meeting of the minds between the parties regarding the terms of the sale.

A "contract is formed by the consent of the parties established through offer and acceptance." La.Civ.Code art. 1927. "A contract is null when the requirements for its formation have not been met." La.Civ.Code art. 2029. In this case, Ms. Laborde asserts that the Buy-Sell contract does not contain the contingency clause she required to be incorporated, and that she would not have consented to the agreement without the inclusion of the contingency clause. Additionally, Ms. Laborde claims that the agreement signed by the Allens included her forged initials on pages one and two.

6

Mr. Anderson testified, at trial, that his need to sell property before buying the Allens' property was made known to the Allens and Ms. Thompson from the very beginning. In fact, when first viewing the property with Mr. Allen, Mr. Anderson testified:

> We talked about the reason he was selling the property was because he wanted to get a bigger piece of property and he needed to sell this property before he could purchase. I told him I was in a similar situation. That I had a farm in DeRidder and I had a home in DeRidder and before I could purchase I needed to sell property and, so, we had that in common.

Ms. Laborde corroborated Mr. Anderson's testimony and said:

> [A]t the beginning of our introduction we specifically said, in fact, Mr. Richard and Mr. Jerome and Ms. Peaches and I were on the land that day, the deal was he had to sell his property in North Louisiana to be able to move to South Louisiana to be with his children and he specifically outlined that to Mr. Allen and they even joked about it and said, "Well maybe we should trade off," and [Ms. Thompson] was aware that that was the only contingency we had to be able to buy any property[.]

Additionally, both Ms. Laborde and Mr. Anderson testified that the first offer made on the Allen property included their required contingency clause. Ms. Laborde stated the contingency clause was a "crucial part of [the agreement]." Regarding the first offer, Ms. Laborde explained that although she did not receive a copy of that offer, she "saw it but that was—[Ms. Thompson] filled it out. She took it in her possession and she slipped it into a folder and dismissed us on our initial meeting when we met with her on the first date."

Similarly, Mr. Anderson also recalled Ms. Thompson including the contingency clause in the first offer: "The contingency was that my property would sell and she said where is this property located. I said, 'It's in DeRidder, Louisiana,' as she was writing on somewhere between line 135 and 140 on the

second page and I told her it was 1105 Virgil Sims Road[.]" Mr. Anderson continued:

> I stood up and I leaned over the desk and I spelled Virgil Sims Road for her and then she wrote in the second piece of property was 1103 Walnut Street in DeRidder, Louisiana, as well and that's the way the offer was written that day; $205,000 with a contingency that these two properties sell.

When asked why the clause was not in the Buy-Sell document, Ms. Laborde explained:

> A.    I witnessed, sir—I witnessed, myself, that it was—it was on the second page of the first document that we went to the office to fill out. The contingency was there. Mr. Richard even had to spell the location of the property that he needed to sell before he could buy Mr. Allen's property.
>
> Q.    Did you bring a copy of that document?
>
> A.    I have the copy she handed to us but the second page was completely removed. It was not there. She inserted a blank sheet and I'm [sic] I shouldn't accuse her but I can't see of any other way it could have happened. A blank sheet was inserted in place of the completed sheet that we filled out including the contingency of the necessity of selling the property before we could buy Mr. Allen's.

Ms. Laborde continued:

> Q.    But the contingency, in fact, is not in the contract.
>
> A.    We believed it was 'cause I know I witnessed her writing it down as Mr. Richard was spelling the address to her 'cause I even questioned saying, you know— "Contingent upon the fact," and as an ex-school teacher I was kind of embarrassed. I said, "Contingent, is that an A-N-T or an E-N-T," as I watched him help her spell to outline the contingency clause on that second page.

Ms. Laborde further explained that she and Mr. Anderson returned to Ms. Thompson's office to make a second offer and that Mr. Anderson again reiterated that the offer must include the contingency. In fact, the reason a deposit was made

on the second offer was because Ms. Thompson advised Mr. Anderson and Ms. Laborde that usually a contingency clause scares the sellers, so a deposit demonstrates the buyer's seriousness about the property.

Although Ms. Laborde admitted that she signed the second offer, she believed it contained the contingency clause because nothing in the second offer, except for the price, was being altered. Specifically:

> Q. So, at that point you agreed to submit a $250,000 offer?
>
> A. Yes.
>
> Q. But with the contingency.
>
> A. Yes. Mr. Richard authorized her to go ahead and complete the forms with $250,000 on the contingent—on the contingency that he sells his property and we would bring to her a deposit of twenty-five thousand.
>
> Q. And were you ultimately given a copy of a contract which she indicated to you was preliminary and incomplete?
>
> A. That is how she termed it. . . .
>
> . . . .
>
> Q. . . . . Was it your understand[ing] from your second meeting with Ms. Thompson that she was going to complete the contract to the extent that it wasn't already completed in accordance with your instructions?
>
> A. Yes.

Ms. Laborde identified her signature on page three but added: "That is my signature. That's the sheet she slid across the desk and said you need to sign right here before I present it to Mr. Allen."

Mr. Anderson also testified the second offer was made a couple of days later "and again we told her the contingencies would have to be in there that the property has to sell 'cause we couldn't buy it otherwise." Mr. Anderson explained,

9

"It was really—the second one was no different than the first one. Only thing changed was the price" and that "[t]here was no reason not to believe that the contingency was in there just like it was in the first one. No reason."

On the other hand, the only testimony from the Allens regarding the contract and contingency clause was that neither were present when Ms. Laborde signed the Buy-Sell contract. Additionally, all communication other than that which occurred at the property was done through Ms. Thompson. When asked if he was aware of Mr. Anderson needing to sell property before Ms. Laborde could purchase the Allens' property, Mr. Allen stated:

> Q.   . . . . You don't recall Mr. Anderson advising you at the first meeting that he had properties in DeRidder that he needed to sell before he could buy yours?
>
> A.   No, sir. We—he explained to us that he had some property but the real estate lady informed us that whether his property sold or not it had nothing to do with our property—said he had plenty of money to—to take care of our deal and that's all I remember hearing.

Importantly, the trial court found the testimony of Mr. Anderson and Ms. Laborde was the only testimony regarding the confection of the contract and it found that testimony credible: "[W]hat their testimony is, it's uncontradicted, and the Court does not find any real substantive contradictions in their testimony, which would not allow the Court to believe what they've had to say in the court." Therefore, the trial court concluded, "Based upon the uncontradicted testimony of Mr. Anderson and Ms. Laborde, this Court finds that there was not a meeting of the minds therefore there was not a valid contract to buy and sell[.]"

Similarly, in *Tessier v. La Nasa*, 99 So.2d 56 (La.1958), the Louisiana Supreme Court found no meeting of the minds between two parties for a contract for sale of property because the buyer believed he had only agreed to purchase the

property if his agent obtained a loan for him, but that condition was not met. Although this suit was initiated by the real estate agent to recover his commission, the court concluded the contract was not binding. The court found the agent, who negotiated the contract, understood the sale was contingent on his ability to obtain a loan for the buyer, a fact which the agent disputed. Both the buyer and seller signed the contract, which did not contain a clause conditioning the sale. The agent was unsuccessful in obtaining the loan. All parties agreed the sale was to be a cash sale, but agreed that, following the agent's failure to obtain a loan, no deposit was made by the buyer and no contract to purchase was enforced. Despite the lack of condition in the contract, but with parol evidence admitted, the supreme court opined, "The conclusion is inescapable from the testimony and the circumstances surrounding the transaction, that the contract for the purchase of the property was contingent upon the loan . . . . Hence, in default of obtaining the loan, the contract was not binding[.]" *Id.* at 58.[1]

In the current case, Ms. Laborde did not agree to a contract without a contingency clause, therefore, there was no meeting of the minds between the buyer and sellers. The record supports the conclusion that Ms. Laborde only signed the Buy-Sell contract because she witnessed and believed the contingency clause was included in the offer, and that without the contingency clause Ms. Laborde would not have entered the contract. Under the facts presented in this case, any reasonable finder of fact could have concluded there was no meeting of the minds between Ms. Laborde and the Allens. We find no manifest error on the part of the trial court and affirm the judgment below.

---

[1] This court notes that a concurrence in *Tessier* argues the outcome would have been different if the suit had been between buyer and seller because the concurring justice believed parol evidence would not have been admissible under those circumstances to alter the signed contract. However, we have found in the current case, under the particular circumstances, permitting parol evidence was proper.

**CONCLUSION:**

For the foregoing reasons, the trial court's judgment is affirmed.  Costs of this appeal are assessed to Appellants, William H. Allen and Melody A. Allen.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.